**Ronald Lloyd MADDUX**

v.

**Jim ROSE, Warden, Tennessee State Penitentiary; Attorney General, State of Tennessee.**

No. CIV-1-79-99.

United States District Court, E. D. Tennessee, S. D.

Jan. 22, 1980.

Leroy Phillips, Jr., Chattanooga, Tenn., for petitioner.

Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is a habeas corpus proceeding pursuant to 28 U.S.C. § 2254. The case is presently before the Court upon the respondent's motion to dismiss, or alternatively, for summary judgment, and upon the petitioner's motion to strike the said respondent's motions. By his amended petition, the petitioner seeks to have his conviction and sentence set aside in the criminal case entitled "*State of Tennessee v. Ronald Lloyd Maddux*," Docket No. 7280 in the Criminal Court for McMinn County, Tennessee. The petitioner and his wife were jointly indicted, tried and convicted for the murder of his four year old step-daughter, Melisha Morganna Gibson. They each received a sentence of 99 years and one day. The present petition is filed upon behalf of the husband only.

In his original pro se petition the petitioner alleged four grounds for relief and requested the appointment of his criminal court trial counsel as his counsel in these proceedings. The Court having made the appointment of counsel as requested, an amended petition was filed on behalf of the petitioner. The amended petition incorporated each of the grounds alleged in the original pro se petition except one, namely

the allegation that the petitioner's due process rights were violated by denial of access to records of the Department of Public Welfare. Incorporating this allegation into the allegations in the amended complaint, the petitioner asserts as grounds for federal habeas corpus relief that his rights under the Fifth (self-incrimination), Sixth (impartial jury; assistance of counsel), and Fourteenth (due process) Amendments to the Constitution were violated in that the trial court: (1) refused to change the venue of the trial to a county free from undue excitement and prejudicial pretrial publicity; (2) improperly allowed into evidence an alleged confession of the petitioner and improperly charged the jury with regard to the alleged confession; (3) permitted improper cross-examination of the petitioner; (4) denied the petitioner a severance when the defenses of petitioner's co-defendant were totally antagonistic; (5) improperly permitted the introduction of evidence of prior assaults allegedly committed by the petitioner upon his co-defendant; (6) improperly instructed the jury as to the law of aiding and abetting; (7) refused to declare a mistrial when the State made improper final arguments to the jury and (8) denied access to Department of Public Welfare records. The petitioner also seeks relief in these proceedings upon the allegation that (9) the conditions of his imprisonment violate his Eighth Amendment rights in that they constitute cruel and unusual punishment. It is alleged that the petitioner has exhausted his state court remedies with respect to each of the foregoing grounds.

In his answer the respondent denies that the petitioner is entitled to habeas corpus relief and denies each ground asserted for such relief. Along with his answer, the respondent has filed portions of the state trial transcript (Ex. # 1), the opinion of the Tennessee Court of Criminal Appeals affirming the petitioner's conviction (Ex. # 2), the order of the Tennessee Supreme Court denying his petition for a writ of certiorari (Ex. # 3), together with copies of the petitioner's briefs in the Tennessee Court of Criminal Appeals (Ex. # 4A), and the Tennessee Supreme Court (Ex. # 4B).

Upon the basis of his answer and this record the respondent has filed a motion seeking to have the petition dismissed or in the alternative, seeking a summary judgment of dismissal.

In response to the answer and motion to dismiss or for summary judgment, the petitioner has filed a complete transcript of the state trial court proceedings (Ex. # 5) along with a transcript of proceedings held on November 5, 1976 with regard to the issue of venue (Ex. # 6).

From the record now before the Court, the following facts appear undisputed in that record. Upon October 20, 1976 the Bradley County, Tennessee Grand Jury returned an indictment jointly charging the petitioner and his wife with the murder of Melisha Morganna Gibson. On November 4, 1976 the petitioner's counsel filed a motion alleging prejudicial publicity and public excitement against the petitioner and seeking a change of venue. Following a hearing upon this motion upon November 4 (Ex. # 5, p. 17–42) and upon November 5 (Ex. # 6, p. 1–11), the venue of the lawsuit was transferred to McMinn County, Tennessee, a county adjoining Bradley County. A further hearing upon various pretrial motions was held upon February 21, 1977 (Ex. 5, p. 42–267). At that time the State, because of an intervening state Supreme Court decision holding the Tennessee Death Penalty Statute unconstitutional, elected to waive the charge of first degree murder and proceed to trial upon the lesser included charge of murder in the second degree (Ex. # 5, p. 62). Included within the motions heard upon this date were (1) the petitioner's motion for access to Department of Public Welfare records, which motion was denied (Ex. # 5, p. 63–68); (2) the petitioner's motion for a severance of his trial from the trial of his co-defendant which motion was denied (Ex. # 5, p. 73–84); and (3) the petitioner's motion to suppress his alleged confession, which motion was denied after a substantial evidentiary hearing (Ex. # 5, p. 119–259).

Thereafter the case came on for trial upon February 28, 1977. Following exten-

sive voir dire by the court and counsel, a jury was selected (Ex. # 5, p. 279–451). Prior to the jury being sworn an additional motion for change of venue was filed on behalf of the petitioner. After a further hearing, and in light of the voir dire of the jury, the additional motion for change of venue was denied (Ex. # 5, p. 453–457). The jury was thereupon sworn and sequestered and the case proceeded to trial (Ex. # 5, p. 463–973). The State presented nine witnesses, including two ambulance attendants, four investigative officers, two of the petitioner's stepchildren and a pathologist (Ex. # 5, p. 466–656). The petitioner and his mother were the only witnesses to testify upon behalf of the petitioner. The petitioner's co-defendant, Mrs. Maddux, likewise testified in her own defense, along with her two sisters, three neighbors and a former landlord (Ex. # 5, p. 759–936).

Following his conviction and sentence, the petitioner appealed to the Tennessee Court of Criminal Appeals. Included within his assignments of error in that court were each of the grounds now asserted in these proceedings as being grounds for habeas corpus relief other than the petitioner's ninth contention, wherein he asserts that the condition of his confinement constitutes cruel and unusual punishment (Ex. # 4A). The Tennessee Court of Criminal Appeals, in an extensive opinion, overruled each of the petitioner's assignments of error and affirmed his conviction (Ex. # 2). The petitioner filed a petition for a writ of certiorari with the Tennessee Supreme Court. The only errors cited in that petition and which are now relied upon as grounds for habeas corpus relief were the ones having reference to venue and having reference to the petitioner's confession (Ex. # 4B). No assignments were made in the Tennessee Supreme Court with regard to six of the nine matters now cited as grounds for federal habeas corpus relief. The Tennessee Supreme Court denied the petitioner's application for a writ of certiorari (Ex. # 3).

On the basis of the foregoing record, the respondent concedes that no state court remedies are presently available to the petitioner with regard to the matters herein complained of and acknowledges that the petitioner has accordingly exhausted his state court remedies. It is contended by the respondent, however, that the petitioner's failure to assert in his petition for certiorari to the Tennessee Supreme Court six of the nine errors now complained of constitutes a state court procedural default under T.C.A. § 40–3812, thereby barring federal habeas corpus review as to those issues so omitted. Presumably the respondent relies in this regard upon the recent United States Supreme Court case of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) wherein the Court modified the "knowing waiver" and "deliberate by-pass" rule laid down in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The issue involved in the *Wainwright* case was whether federal habeas corpus was available to review an alleged error in the admission of a confession in a state criminal trial when the petitioner's attorney had failed to assert an objection to the admission of the confession in the course of the criminal trial as required by the state contemporaneous objection rule, thereby barring any state appellate court review of the alleged error. The United States Supreme Court concluded that "review of the claim should be barred on habeas, as on direct appeal, absent a showing of cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation". Although *Wainwright* is not altogether clear on the subject, this Court reads that case as limiting the "cause" and "prejudice" rule to procedural defaults in the state trial courts, and leaving in effect the *Fay v. Noia* "knowing waiver" and "deliberate by-pass" rule where the procedural defaults occur on the state appellate court level. Accordingly, this Court will consider each of the nine complaints of error asserted by the petitioner in this habeas corpus proceeding. In the course of that consideration the Court will resolve the issue raised by the petitioner's motion to strike the respondent's motion for summary judgment, and that is whether

the present record is sufficient to permit a decision of the petitioner's contentions or whether an evidentiary hearing will be required as regards any particular issue.

### I—*Venue*

The petitioner contends that he was denied a fair trial with an impartial jury in violation of the Sixth and Fourteenth Amendments due to the trial judge's refusal to change the venue of the trial to a county free from undue excitement and prejudicial pretrial publicity. The petitioner's motions in this regard were made pursuant to the following Tennessee statutes:

40–2201. *Undue excitement as ground for change on defendant's application.*—In all criminal prosecutions the venue may be changed, upon the application of a defendant, when it is made to appear satisfactorily to the court that, from undue excitement against the prisoner in the county where the offense was committed, or any other cause, a fair trial could probably not be had.

40–2203. *County to which changed.*—The venue shall be changed to the nearest county, either in or out of the judicial circuit in which the prosecution is pending, where the same causes do not exist.

40–2204. *Defendant's election of counties.*—The defendant may elect to which county the venue shall be changed, when in the opinion of the court, there are two (2) or more adjoining counties, or counties about equidistant, to which the case might be removed under the provisions of § 40–2203.

The petitioner sought and obtained a change of venue from Bradley County; however, the trial judge denied petitioner's request to elect the county of his choice under T.C.A. § 40–2204 and on November 4, 1976, ordered that the case be transferred to McMinn County, Tennessee (Ex. # 4, p. 17–39). The trial was continued to February 28, 1977 and the trial judge urged counsel to bring to his attention any undue excitement that might be found in McMinn County during the month of February, 1977. After the jury was selected, the peti-

tioner again moved for a change of venue (Ex. # 5, p. 453–54). This request was denied (Ex. # 5, p. 456–57).

The Tennessee Court of Criminal Appeals construed the above-mentioned statutes and held that the trial judge improperly relied upon his own personal knowledge and opinion when he transferred the case from Bradley to McMinn County. The state appellate court also found that no competent evidence was submitted by the petitioner or the prosecution in the hearing upon the petitioner's second motion for a change of venue (Ex. # 2 at p. 29). The errors of the trial judge in deciding these two motions upon his own knowledge and experiences were considered harmless, however, because in the opinion of the Court of Criminal Appeals, the petitioner was "tried by a fair and impartial jury of McMinn County citizens carefully and properly selected and chosen." *Id.* at 34. This reasoning was appropriate for, as the Supreme Court has stated, no constitutional infirmity exists by virtue of a trial court's refusal to change the venue of a case if the criminal defendant received a trial by an impartial jury. *Beck v. Washington*, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962).

As regards the appropriate interpretation of the elective provisions of the Tennessee Change of Venue Statute, interpretation of state statutory law is not a proper function for a federal court under its habeas corpus jurisdiction absent some question of the constitutionality of the statute. *Israel v. Odom*, 521 F.2d 1370 (7th Cir. 1975); *Olson v. Tahash*, 344 F.2d 139 (8th Cir. 1965) cert. denied 382 U.S. 858, 86 S.Ct. 113, 15 L.Ed.2d 96.

In acting upon a habeas corpus petition, a federal district court must hold an independent evidentiary hearing regarding an alleged constitutional violation unless the state court trier of fact has reliably found the relevant facts after a full and fair hearing. *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770, 785–86 (1963). In the context of an alleged violation of the right to a fair and impartial jury under the Sixth and Four-

teenth Amendments, the Supreme Court has held also that it is the duty of the District Court to evaluate independently the voir dire testimony of the impaneled jurors. *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756 (1961).

■ The Court is of the opinion, after fully reviewing the voir dire testimony of the approximately forty prospective jurors questioned, that a fair and impartial jury was selected to hear the evidence in the petitioner's trial. The fact that there was extensive media coverage cannot alone create a presumption that the selected jurors were prejudiced against the petitioner. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *United States v. Johnson*, 584 F.2d 148 (6th Cir. 1978). The prospective jurors who stated that they had already formed an opinion about the petitioner's guilt or innocence were properly excused by the trial court. Those who were permitted to serve upon the jury indicated that they could and would be impartial. While a juror's assurances of his own impartiality may be insufficient to guarantee that he will properly perform his duty, [*See Goins v. McKeen*, 605 F.2d 947, 953–54 (6th Cir. 1979)] the record here fails to show that the trial setting was inherently prejudicial "or that the jury selection process of which he complains permits an inference of actual prejudice." *Murphy v. Florida, supra* 421 U.S. at 803, 95 S.Ct. at 2038, 44 L.Ed.2d at 596–97; *see also, Luallen v. Neil*, 453 F.2d 428, 431 (6th Cir. 1971). The Court notes also that the trial judge properly admonished the members of the jury regarding publicity and their exposure to media accounts of the petitioner's trial, and that the jury was sequestered during the petitioner's trial (Ex. # 5 at p. 452–53; 463–65). The Court is of the opinion that no federal evidentiary hearing is necessary in this case on the issues of venue, fair trial and impartial jury. The petitioner received a full and fair hearing on these issues as reflected by the record upon his motions for a change of venue, and the record upon the extensive voir dire of the prospective jurors. No ground for habeas corpus relief exists as regards the trial court's actions with reference to venue.

## II—*Confession*

The petitioner next seeks habeas corpus relief upon the ground that the state trial court erred in failing to suppress the petitioner's alleged confession. The petitioner contends that the alleged confession was either fabricated by the police or was obtained in violation of his Fifth (self-incrimination), Sixth (right to counsel) and Fourteenth (due process) Amendment rights. The petitioner insists that the confession was obtained in violation of due process in that it was obtained by coercive means and was thus not voluntary; that it was obtained in violation of his Fifth Amendment right against self-incrimination and against his Sixth Amendment right to counsel. He contends that there was no intelligent knowing and voluntary waiver upon his part of those rights.

The following record was established in the trial court with regard to these contentions. The petitioner filed a motion to suppress his alleged confession. An evidentiary hearing was held upon this motion (Ex. # 5, p. 119–259). In the course of that hearing testimony was received from six witnesses, including the petitioner, his wife, his mother, his brother, an attorney and the detective who took the statement. Upon the basis of that record the trial court found that the petitioner's statement was voluntarily given and that the petitioner had duly waived his rights against self-incrimination and his right to assistance of counsel (Ex. # 5, p. 257–259).

Having reviewed the evidentiary record made in the trial court, this Court is of the opinion that the petitioner was afforded a full and fair evidentiary hearing in the trial court and that no further evidentiary hearing would be required upon the confession issue. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). From the evidentiary record made in the state court, this Court concludes that the following facts relevant to the confession issue were duly established. After receiving a report of the death of Melisha Gibson upon the

morning of October 13, 1976, investigative officers arrived at the petitioner's home and placed the petitioner under arrest. At the time of his arrest the petitioner was a 31 year old white male. He had a eighth grade education and was capable of reading and writing. The petitioner was held in custody the balance of that day at the Bradley County Jail, but no custodial interrogation of him was undertaken until approximately 7:00 p. m. on that day. In the meanwhile the petitioner was not permitted to communicate with members of his family who had arrived at the jail, but was permitted to talk with an attorney who was currently representing him in a civil matter and who had been called to the jail around 11:00 a. m. by a member of the petitioner's family. The attorney did not advise the petitioner to refrain from talking with an investigating officer as the attorney understood from talking with the petitioner that the petitioner had already made a statement to the police regarding his knowledge of his daughter's death. The attorney did advise the petitioner that it would not be in his best interest to sign any statement. At that time he further advised the petitioner that he would not represent the petitioner in regard to any criminal charges brought against him. Upon leaving the jail the attorney likewise told the sheriff that he had advised the petitioner not to sign anything and had made it clear to the sheriff that he would not represent the petitioner if criminal charges were brought against him.

During the course of the day, Detective Lawson, who had been assigned to investigate the case, interviewed the petitioner's wife, Mrs. Maddux, upon two occasions. Around 7:00 p. m. he undertook for the first time to interview the petitioner. He initiated the interview by reading to the petitioner an advice of his rights with respect to self-incrimination and the assistance of counsel, all in accordance with the rules set down in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The petitioner thereupon stated that he understood his rights and signed an admonition and waiver of rights free of any threats,

coercion or abuse. The detective thereupon proceeded to interrogate the petitioner for a period of approximately four hours. At the inception of the interview the detective was not aware that the petitioner had talked with a lawyer, but in the course of the interview the petitioner advised him of this fact and stated that the lawyer had advised him to tell what had happened but not to sign any statement. The detective wrote out a six-page statement as being the statements made by the petitioner in the course of the interview. When the statement was presented to the petitioner he declined to sign it in accordance with the advice of his lawyer. This unsigned statement was read to the jury in the course of the trial and over the objection of petitioner's counsel (Ex. # 5, p. 625).

■ Upon the basis of the evidentiary record made in the trial court and upon the basis of the foregoing findings, this Court is of the opinion that no violation of the petitioner's Fourteenth Amendment right to due process occurred in the taking of the statement in that the statement was knowingly and voluntarily made. The Court is of the further opinion that in making the statement the petitioner knowingly and understandingly waived his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. The Court is accordingly of the opinion that no constitutional error was committed in admitting petitioner's statement in the course of the trial.

In his second citation of error regarding the confession issue, the petitioner also asserts that the trial court committed an error of constitutional dimension when he instructed the jury at the close of the trial that he had earlier determined that the petitioner's confession was voluntarily made. The relevant portion of the Court's charge in this regard is as follows:

"Evidence of confessions have been introduced in this case. A confession is a statement by a defendant or the defendants that they committed the crime charged or were implicated therein. You

should receive these confessions as evidence against the defendants with caution. I have ruled that the confessions were voluntarily made but it remains your duty to judge their truth. In so judging you should consider the circumstances under which the confessions were obtained, as well as any evidence which contradicts all or part of the statements made. You must consider all of the statements made by the defendants whether favorable or unfavorable to him or her, and you must not without good reason disregard the alleged confessions or any part of them. If, however, the evidence in the case leads you to believe that the alleged confession or any part of them was either untrue or was never in fact made, you should disregard that which you do not believe." (Ex. # 5, p. 968)

As a preface to a discussion of the petitioner's contention of error in the foregoing charge, it should be noted that habeas corpus does not lie to set aside a conviction on the basis of improper jury instructions unless the impropriety is a clear denial of due process rendering the trial fundamentally unfair. *Higgins v. Wainwright,* 424 F.2d 177, 178 (5th Cir. 1970); *see Murphy v. Beto,* 416 F.2d 98, 100 (5th Cir. 1969). Habeas corpus will be granted on the basis of an error in jury instructions only if it is so serious that the trial becomes unfair in the constitutional sense. *See Alvarez v. Estelle,* 531 F.2d 1319, 1322–1323 (5th Cir. 1976); *Gomez v. Beto,* 402 F.2d 766, 767–768 (5th Cir. 1968); *Berrier v. Egeler,* 428 F.Supp. 750, 752 (E.D.Mich.1976).

While in some states the issue of the voluntariness of a confession may be for decision by both the trial judge and the jury, a rule sometimes referred to as the "Massachusetts Rule", the State of Tennessee follows the majority or "orthodox" rule by requiring that the issue of voluntariness be conclusively decided by the trial judge. *State v. Pursley,* 550 S.W.2d 949 (Tenn. 1977); *McCravey v. State,* 221 Tenn. 237, 426 S.W.2d 174. Either procedure is constitutionally permissible. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). *See also Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1974). Even under the "orthodox" rule the weight to be given to the confession is a matter for the jury, however. *Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). *See also Jackson v. Denno, supra.* The trial court's instructions to the jury were in accord with the foregoing rules. This Court perceives no violation of the petitioner's Fourteenth Amendment due process rights relative to the trial judge's jury instructions regarding the petitioner's confession.

### III—*Cross-Examination*

Under the third issue asserted by the petitioner in these proceedings, he contends that the trial court erred in refusing to declare a mistrial, or, in the alternative, in failing to give a special jury instruction relating to an alleged improper cross-examination of the petitioner. The relevant portion of the State's cross-examination of Mr. Maddux is set out in the transcript (Ex. # 5, p. 700–708). The cross-examination in issue dealt with the petitioner's confession. Counsel for the State asked the petitioner if he had testified at the earlier suppression hearing "that in fact your attorney came and told you to give a statement but not to sign it." (Ex. # 5, p. 701). Counsel for the defendant objected to the question. The trial court excused the jury and reviewed the tapes of the suppression hearing. The trial judge found that there was "some" foundation for the prosecutor's question, but "not enough . . . to make the question admissible." (Ex. # 5, p. 707) He instructed the members of the jury when they returned that he considered the question incompetent and that they were not to consider the question or any answer thereto for any purpose whatsoever (Ex. # 5, p. 708).

An accused's prior inconsistent statements may, of course, be used to impeach his credibility, when a proper foundation for the statements has been laid. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In the petitioner's

trial, the trial court properly sustained the objection of counsel for the defense, as there was an insufficient foundation in fact for the prosecutor's question. The Court is of the opinion that whatever prejudice may have resulted from the prosecutor's question, it was sufficiently dispelled by the state court's corrective instruction to the members of the jury upon their return. *Cf., United States v. Reincke*, 354 F.2d 418 (2d Cir. 1965), *cert. denied sub nom., Smith v. Reincke*, 384 U.S. 993, 86 S.Ct. 1896, 16 L.Ed.2d 1010 (1966). *See also Shadd v. United States*, 423 F.Supp. 511 (W.D.Pa. 1976).

### IV—*Severance*

It is next asserted by the petitioner that a fundamental error denying him due process was committed by the trial court when it denied his motion for a separate trial from the trial of his co-defendant. The record reflects in this regard that the petitioner filed a motion in the state court seeking to have his trial severed from the trial of the co-defendant, Mrs. Maddux (Ex. # 5, p. 73). The motion was predicated upon the contention that the petitioner would be prejudiced in a joint trial as he and his co-defendant were asserting antagonistic defenses. The trial court denied the motion for a severance. Upon the trial of the case the petitioner and his co-defendant each testified and each sought to exonerate himself or herself by placing responsibility upon the other spouse for any gross mistreatment resulting in the death of the daughter, Melisha Gibson.

■ Although inculpatory statements of each defendant were admitted into evidence, in view of the fact that each party testified and was therefore available for cross-examination by the co-defendant, no denial of the right of confrontation arose by reason of the petitioner's motion for severance having been refused. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ Suffice it to say that the denial of a severance under the facts and circumstances of the criminal trial here involved did not constitute error. The denial of the motion caused no fundamental unfairness in the trial proceedings rising to the level of a denial of due process. On the contrary, as properly concluded by the Tennessee Court of Criminal Appeals, the denial of a severance under the facts and circumstances of this case did not even rise to the level of an error reversible upon appeal. As stated in the case of *United States v. Barber*, 442 F.2d 517 at 529:

> "Denial of severance is not a ground for reversal on appeal unless clear prejudice and abuse of discretion is shown. *Johnson v. United States*, 356 F.2d 680 (8th Cir. 1966). . . . Moreover, the mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another have both been held to be insufficient grounds to require separate trials. *Dauer v. United States*, 189 F.2d 343 (10th Cir. 1951)."

In this regard see also *United States v. Haldeman*, 181 U.S.App.D.C. 254 at 294, 559 F.2d 31 at 71 (D.C.Ct.App.1976).

### V—*Evidence of Prior Assaults*

■ As his fifth ground for habeas corpus relief the petitioner contends that he was denied due process by the trial court's action in admitting evidence of prior assaults allegedly committed by the petitioner upon his co-defendant. The trial record reflects in this regard that counsel for Mrs. Maddux, in support of her theory that she was under the dominance of Mr. Maddux, sought to introduce evidence that Mr. Maddux had upon various occasions been observed assaulting or otherwise physically mistreating Mrs. Maddux (Ex. # 5, p. 760). The attorney for Mr. Maddux, while not objecting to the examination of Mrs. Maddux or the cross-examination of Mr. Maddux regarding such alleged assaults, did object to such testimony being elicited from other witnesses (Ex. # 5, p. 767–78). The trial court thereupon limited any such testimony to the period of one year previous to the date of the alleged crime (Ex. # 5, p. 778). Two instances of such assaults were thereupon testified to by witnesses called

upon behalf of Mrs. Maddux (Ex. # 5, p. 925 & 930). In instructing the jury in regard to this testimony the court in its charge stated:

"The court has allowed the defendant, Wanda Maddux, to present proof of acts of violence directed toward her by the defendant, Ronald Maddux, for the purpose of showing that she, the said Wanda Maddux, was under the complete dominance of Ronald Maddux. This proof is offered for that purpose, and for no other. It cannot be considered in deciding the guilt or innocence of the defendant, Ronald Maddux." (Ex. # 5, p. 967)

The Tennessee Court of Criminal Appeals found no error in the foregoing procedures and instructions. Neither does this Court. Even conceding the existence of an error reversible upon appeal, the error would not rise to the level of a denial of due process. As stated in the case of *Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir. 1977):

". . . The mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief, but only where the violation of the state's evidentiary rules results in a denial of fundamental fairness should habeas be granted. *Woods v. Estelle,* 547 F.2d 269 (5th Cir. 1977). As a guideline to applying the criterion of fundamental fairness, the erroneous admission of prejudicial evidence can justify habeas corpus relief only if it is 'material in the sense of a crucial, critical, highly significant factor.' . . . The admission of the gun into evidence did not constitute a violation of due process and, thus, does not justify federal habeas corpus relief."

To the same effect *see Oliphant v. Koehler,* 549 F.2d 547 at 555 (6th Cir. 1979).

## VI—*Improper Jury Instructions*

The petitioner next contends that he was denied due process by the trial court having improperly instructed the jury upon the law of aiding and abetting. The instruction complained of is as follows:

"I charge you further that if one spouse commits a crime which lasts or extends over a period of time and that during that period of time the other spouse stood by, knew and saw the crime was being committed, and comforted and consorted with the said perpetrator of the crime while it was being perpetrated, and did nothing to stop the commission of the said crime, you may consider that spouse as an aider and/or abettor in the commission of the said crime although that spouse may not have actually participated in the commission of the alleged crime." (Ex. # 5, p. 966)

Apart from the fact that the Tennessee Court of Criminal Appeals found no error in the charge (Ex. # 2, p. 54–58), a conclusion in which this Court concurs, as previously pointed out in an earlier portion of this memorandum, habeas corpus does not lie to set aside a conviction on the basis of an improper jury instruction unless the impropriety is a clear denial of due process rendering the trial fundamentally unfair. Reference is here made to the discussion of this subject within Section II of this memorandum. The Court perceives no violation of the petitioner's Fourteenth Amendment due process rights relative to the above jury instruction.

## VII—*Argument*

The petitioner next contends that his Fourteenth Amendment right of due process was denied by the trial court in having failed to declare a mistrial after the prosecuting attorney had made improper argument to the jury. The argument complained of was made by the State's Attorney in attempting an explanation of why the petitioner and his co-defendant were being prosecuted for second degree murder rather than first degree murder. At this point in his argument the prosecutor stated: "If the Supreme Court had not intervened and told me as a prosecutor . . .". Thereupon his argument was interrupted by an objection by the petitioner's attorney and a discussion ensued between counsel and the court with regard to whether reference to a Supreme Court decision was proper (Ex. # 5, p. 943–44). The trial court sustained the objection. At that point fur-

ther discussion ensued between counsel and the court as to whether premeditation was an element of the murder charge as it was being tried. The court then ruled that the State's Attorney could not argue first degree murder nor could he argue the elements of first degree murder (Ex. # 5, p. 946). These proceedings occurred in the presence of the jury.

In considering an assignment of error made with reference to these proceedings, the Tennessee Court of Criminal Appeals ruled that the granting of a mistrial under the circumstances of the argument was within the discretion of the trial court and that denial of a mistrial constituted no abuse of that discretion (Ex. # 2, p. 45).

 The federal courts, in the exercise of habeas corpus jurisdiction, are possessed of no general supervisory authority over the state criminal court proceedings. This limitation is equally applicable to alleged prejudicial arguments of state prosecutors as it is to other phases of state court trials. As stated in the case of *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979), "Prosecutorial argument must be so egregious as to render the entire trial fundamentally unfair" before federal habeas corpus relief would be available. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *cf. Burks v. Egeler*, 512 F.2d 221 (6th Cir. 1975). No due process error was committed in the complained of argument of the prosecuting attorney. The petitioner's seventh ground for habeas corpus relief will accordingly be denied.

### VIII—*Denial of Access to Welfare Records*

As his eighth ground for habeas corpus relief the petitioner contends that the trial court's action in denying him access to Public Welfare Department records constituted a denial of due process. With regard to this contention the record reflects that the petitioner's counsel in the course of trial preparation sought access to Public Welfare Department records (Ex. # 5, p. 68–78). The subject records were made available to the

trial court for an in camera inspection. Concluding that the records contained no relevant matters not already available to the petitioner's counsel in a transcript of a prior child abuse proceeding, the trial court denied the request for access to the records (Ex. # 5, p. 68). Neither the records nor their contents were ever otherwise made a part of the state trial court proceedings. Upon this state of the record, there is an absence of a showing of relevant matters in the records or of any prejudice to the petitioner in their denial.

### IX—*Conditions of Confinement*

In his ninth ground for relief the petitioner contends that the conditions of his imprisonment violate his Eighth Amendment rights in that they constitute cruel and unusual punishment. The allegations of the petition in this regard are that the petitioner is improperly being held in isolation, is being subjected to hostile treatment by the prison guards and is generally denied access to institutional programs and facilities available to other inmates.

 While allegations of Eighth Amendment violations may be subject to judicial review within a court of proper jurisdiction and venue, complaints regarding the conditions of confinement do not relate to. the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner. Accordingly, federal habeas corpus is not available to an inmate complaining of mistreatment during an otherwise legal incarceration. *Cook v. Hanberry*, 592 F.2d 248 (5th Cir. 1979). *See also Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Furthermore, since the state penal institution in which the petitioner is presently confined is without the jurisdictional venue of this Court, consideration of those matters in this proceeding is not appropriate.

### X—*Conclusion*

Although the Court has concluded that the petitioner's habeas corpus complaints

are each without legal merit, had error been found with respect to either matter complained of it would appear that the evidence of the petitioner's guilt was of such strength as to render any such error harmless beyond a reasonable doubt pursuant to the rule laid down in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Briefly summarizing that evidence, and wholly apart from the confession of the petitioner or other evidence complained of in this habeas corpus proceeding, the trial court record appears to establish the following facts beyond any reasonable doubt.

In October of 1976 the petitioner, Ronald Maddux and Mrs. Maddux were husband and wife living together at their residence in Cleveland, Tennessee. Also living in the home with them were four children, three of whom were Mr. Maddux's stepchildren. Melisha Gibson was the youngest of the three stepchildren. At the time of her death she was four years of age. Upon previous occasions the stepchildren had been removed from the home by the Department of Public Welfare. Melisha had been removed from the home upon charges of child abuse when she was 10½ months of age. All of the children except Melisha were returned to the home in August of 1975. Melisha was returned to the home some four months prior to her death.

Upon October 11 and 12, 1976, at a time when Mr. Maddux was drinking heavily, he engaged in repeated acts of assault, torture and mistreatment of Melisha. These acts included ordering her to walk or run for hours at a time from one portion of the home to another, and striking her repeatedly with a "billy" stick to enforce such activity. In response to the child's request for drinking water, he compelled her upon several occasions to swallow a "red hot" sauce. When the child became nauseated from this treatment and vomited, he administered additional punishment. The first night the child was compelled to sleep upon a bare floor in an unheated room with only a spread for a cover. The second night the child was provided with a mattress but no cover. Upon two occasions during this course of treatment the child was forced to take cold showers, then re-dress herself in wet clothing. Upon the morning of October 13, 1976, Melisha Gibson was discovered dead upon the mattress. Her body was unclothed and the mattress was water soaked. An autopsy revealed multiple bruises over most of the child's body, including extensive hemorrhaging beneath the scalp and a traumatic laceration of the child's left kidney. According to the examining doctor, the child died of hypertensive and neurogenic shock as a result of the beatings that she had received.

In accordance with this memorandum an order will enter denying the petitioner's motion to strike, sustaining the respondent's motion for summary judgment, and dismissing the petition for habeas corpus.