**Evidio MATOS, Plaintiff,**

v.

**Ronald MILES, Superintendent of Southport Correctional Facility, Defendant.**

**No. 89 Civ. 2407 (KTD).**

United States District Court,
S.D. New York.

March 9, 1990.

Evidio Matos, pro se.

Robert M. Morgenthau, Dist. Atty., New York County (Marc Frazier Scholl, Paul Harnisch, Asst. Dist. Attys., of counsel), New York City, for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Petitioner Evidio Matos, proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). Matos is currently a New York state prisoner serving concurrent indeterminate prison terms of fifteen years to life and three and one-half to seven years upon conviction of murder in the second degree and assault in the second degree, respectively. The sentence was imposed by the Supreme Court, New York County (Torres, J.) after a trial by jury. On appeal, the Appellate Division, First Department, affirmed Matos' conviction and sentence without opinion. The New York Court of Appeals then denied leave to appeal.

Matos appears to have fully exhausted his state remedies as required by *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). He now seeks this petition on the grounds that: (1) he was deprived of effective assistance of counsel at the trial stage; and (2) the trial court did not deliver *sua sponte* an alibi charge.

### FACTS

Shortly before midnight on June 10, 1984, Matos and an unidentified man armed with a shotgun became embroiled in an argument with Eriberto and Abraham Echevarria near the corner of 112th Street and Lexington Avenue in Manhattan. During the dispute, Matos struck Abraham Echevarria across the abdomen with a heavy metal pipe and then ordered his accomplice to shoot Eriberto Echevarria. Eriberto was shot at close range and soon afterwards died from the wounds. Matos and his cohort then fled into the night.

Matos was arrested a short time later when Noelia Jardines, Eriberto Echevarria's common law wife and a witness to the shooting, pointed him out on the street to the police. Shortly thereafter, Abraham Echevarria also identified Matos at the police precinct as the man who had struck him with the pipe and had ordered the other man to shoot Eriberto. Both Jardines and Abraham later testified at trial to have recognized Matos as someone they had seen in their neighborhood prior to the incident on June 10, 1984.

Matos claims that his counsel: (1) failed to investigate and prepare the defense case; (2) failed to make appropriate pretrial motions to suppress identification evidence; (3) failed to impeach prosecution witnesses with prior inconsistent descriptions and versions of events; (4) elicited damaging hearsay testimony; (5) failed to call two alibi witnesses; (6) failed to request an alibi charge; and (7) failed to make an opening statement and did not present a focused summation consistent with the evidence.

### DISCUSSION

A defendant challenging his conviction based on a claim of inadequate representation bears the burden of showing that his attorney's performance " 'fell below an objective standard of reasonableness,' " *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2nd Cir.1990) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), and that "but for this error, there is a 'reasonable probability' the outcome would have been different." *Id.* at 694, 104 S.Ct. at 2068. To meet that burden, Matos must overcome the strong presumption that counsel's efforts could be considered sound trial strategy under the circumstances counsel faced at the time he represented his client. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The attorney of whom Matos now complains was the second counsel assigned by the state court to represent Matos. A thor-

ough review of the entire record reveals that trial counsel seems to have done the best he could with the situation the facts presented. In light of the eyewitness testimony identifying Matos as the perpetrator by two witnesses who were not shown to have any motivation to falsely implicate him, counsel employed a sound strategy that apparently was two-fold. First, he relied on Matos' own testimony to argue that Matos was not involved in the shooting and that the eyewitnesses must have honestly mistaken Matos for the real killer. Second, he sought to establish that Matos was not responsible for the homicide by attempting to demonstrate that the prosecution case rested only on a single ambiguous comment that Matos made to the unidentified shooter.

With these circumstances in mind, most of Matos' allegations of ineffectiveness merit little discussion. That counsel did not open to the jury is of no consequence. The Second Circuit has held that the decision whether or not to open is generally a matter of trial tactics, and thus does not constitute the basis for a claim of ineffective assistance of counsel. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2nd Cir.1987). Indeed, at times it is the best strategy for a lawyer to rely upon the presumption of innocence. Similarly, counsel's summation to the jury was not, as Matos suggests, "unfocused." Counsel confronted the evidence and thoroughly advanced his theory of the case. As such, it cannot be said that counsel's strategy in either instance was unreasonable under the circumstances.

Matos' claim that counsel failed to impeach prosecution witnesses with prior inconsistent descriptions and versions of events also does not rise to the level of ineffective assistance of counsel. "Decisions whether to engage in cross-examination, and if so, to what extent and in what manner, are similarly strategic in nature." *Nersesian*, 824 F.2d at 1321.

While I am limited by the record in evaluating whether counsel actually failed to speak with petitioner to prepare the defense, it appears that counsel spoke to Matos on the phone, and there is no allegation that counsel did not speak to prior counsel regarding the case. Even assuming that Matos did not speak to counsel, Matos in no way demonstrates a reasonable probability that, but for counsel's failings, the result of the proceeding would have been different. The record reveals that counsel possessed a thorough command of the facts and that the evidence against Matos at trial was overwhelming.

Matos also contends that his counsel elicited damaging hearsay testimony from the arresting officer on cross-examination regarding the circumstances of the identification made by Jardines before Matos' arrest. However, counsel's tactic was clearly part of a plausible trial strategy that Matos had no knowledge of the shooting and thus Matos' conduct when arrested indicated no consciousness of guilt. Again, that strategy was not unreasonable in light of the facts as they were revealed at trial and Matos fails to demonstrate any reasonable probability that the outcome at trial would have been different.

Likewise, Matos' claim that counsel did not move for a hearing to suppress the pretrial identification by Abraham Echevarria is unavailing. As a threshold matter, counsel did not enter the case until after the statutory period in which to make that motion had elapsed. Matos' claim also ignores the fact that such a motion, in light of the record, would have been unsuccessful. Abraham Echevarria knew Matos from the neighborhood. His pretrial identification of Matos thus was not a situation where he had only seen Matos at the time of the incident. Under New York law, the familiarity of the witness with the suspect eliminates the risk that suggestiveness arising from a police-arranged identification procedure will taint a subsequent identification, and a pretrial hearing to address the issue of suggestiveness is therefore unnecessary. *See People v. Tas*, 51 N.Y.2d 915, 916, 415 N.E.2d 967, 434 N.Y.S.2d 978 (1980).

Moreover, even if Abraham's out-of-court identification had been suppressed, there was no basis for suppressing Abraham's

in-court identification. Matos thus does not show any prejudice arising from counsel's failure to make an untimely suppression motion. For purposes of determining issues of effective assistance of counsel, "not every possible motion need be filed, but only those having a solid foundation." *Nersesian*, 824 F.2d at 1322. Counsel is "certainly not required to engage in the filing of futile or frivolous motions." *Id.*

■ Similarly, the failure to call the alleged alibi witnesses does not disclose a failure of representation by counsel. The evidence at trial showed that the dispute between Matos and Eriberto began at about 11:30 p.m. on 115th Street, and that the killing took place between 11:30 p.m. and 12:00 a.m. One of the purported alibi witnesses attested that he was with Matos only up to 11:30 p.m. and places him exactly where the prosecution witnesses say that he was at that time. The other witness could only testify as to the Matos' whereabouts between, at best, midnight and 12:30 a.m., when Matos was arrested. Thus neither witness, both of whom were Matos' friends, was in any position to bolster Matos' defense. Furthermore, at least one of them had been interrogated by the police at the time of Matos' arrest and counsel for the defense had no knowledge as to what statements the police might have from that witness. Since neither witness could establish an alibi for Matos, counsel's decision not to call those witnesses can easily be justified and any claim of ineffective assistance of counsel on that ground fails. *See Farinaro v. Kirk*, 675 F.Supp. 75, 82 (E.D.N.Y.1987); *see also Trapnell v. United States*, 725 F.2d 149, 156 (2nd Cir.1983).

■ Concomitantly, counsel's failure to request an alibi charge was consistent with his theory of the case. Based on the trial testimony, there is no indication that such failure prejudiced Matos. Again, Matos' allegations are insufficient to overcome the strong presumption that counsel's performance was reasonable under *Strickland*. *See United States v. Torres*, 845 F.2d 1165 (2nd Cir.1988) (counsel's failure to move to suppress cash seized from defendant at time of narcotics arrest and failure to seek interested witness instruction with regard to government informant's testimony did not rise to level of ineffective assistance). "Every non-frivolous claim need not be urged if 'counsel, as a matter of professional judgment, decides not to present those points.'" *Abdurrahman*, at 74 (quoting *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983)).

■ Matos also complains that the trial court did not deliver a *sua sponte* alibi charge to the jury. Of course, under New York law a defendant's failure to request a jury instruction or object specifically to the omission from the charge constitutes a failure to preserve the issue for state appellate review as a matter of law. N.Y.Crim. Pro.L. § 470.05(2) (McKinney 1983 & Supp. 1990). Because the Appellate Division issued no opinion at all, there is no indication that the state court ever reached the merits, and thus no reason to look beyond the state procedural bar. In any event, Matos has in no way shown that the omission from the court's charge "so infected the entire trial that the resulting conviction violates due process"—a mere showing that a state trial court's "instruction is undesirable, erroneous, or even 'universally condemned'" will not suffice. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Wright v. Smith*, 569 F.2d 1188, 1191 (2nd Cir.1978). In light of the charge as a whole, the otherwise extensive instructions on the prosecution's burden of proof, and the inherent weaknesses of Matos' alibi defense, this "error" certainly does not rise to constitutional proportions.

The petition for habeas corpus is in all respects denied and the complaint dismissed. Leave to appeal *in forma pauperis* is granted.

SO ORDERED.