Michael GREY, Petitioner,

v.

Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, and Robert Abrams, Attorney General, Respondents.

No. 89 Civ. 1004.

United States District Court, E.D. New York.

Sept. 5, 1991.

Martin Goldberg, Franklin Square, N.Y., for petitioner.

Charles J. Hynes, Dist. Atty. by Catherine Arcabascio, Kings County, Brooklyn, N.Y., for respondents.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Petitioner appeals from a comprehensive and persuasive report of Magistrate Judge Orenstein recommending the denial of a writ of habeas corpus. The report is approved on the basis of the Magistrate Judge's opinion set out below.

Because the petition raises issues not fully resolved by the appellate courts on the rights of appellants vis a vis their appellate attorneys, a certificate of probable cause is granted. The petition is dismissed. Notify counsel and petitioner.

So ordered.

## REPORT

ORENSTEIN, United States Magistrate Judge.

Petitioner seeks a writ of *habeas corpus* under 28 U.S.C. § 2254 (1982) claiming he was denied due process of law and effective assistance of appellate counsel. For the following reasons I recommend that Mr. Grey's petition for a writ of *habeas corpus* be dismissed:

### *Procedural History*

Grey was convicted, after jury trial in Kings County Supreme Court of two counts of Murder in the Second Degree (felony murder), (N.Y. Penal Law § 125.-25[3]) and one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03) and was sentenced to concurrent terms of imprisonment of twenty years to life on the two murder counts and five to fifteen years on the weapons count.

Petitioner appealed from the judgment of conviction. On appeal he contended: 1) that there was insufficient evidence to support the verdict; 2) that the trial court erred by not charging the jury on attempted robbery; 3) that the trial court should have charged the jury that mere presence at the scene of a crime is not evidence of guilt; 4) that the court abused its discretion in denying petitioner's request for a severance; and 5) that petitioner's sentence was excessive.

On August 6, 1984, the Appellate Division, Second Department, unanimously affirmed petitioner's judgement of conviction without opinion. *People v. Gray*, 104 A.D.2d 538, 480 N.Y.S.2d 67 (2nd Dept. 1984). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on September 21, 1984. *People v. Gray*, 63 N.Y.2d 775, 481 N.Y.S.2d 1028, 470 N.E.2d 873 (1984) (Jasen, J.). The Appellate Division denied petitioner's *pro se* motion for reargument on March 11, 1985.

By motion dated May 9, 1986 and additional papers dated August 6, 1986, petitioner moved to vacate his judgment of conviction pursuant to N.Y.Crim.Proc.Law § 440.10. Petitioner asserted that his judgment of conviction should be vacated because he received ineffective assistance of appellate counsel. Specifically, petitioner contended that his appellate counsel was ineffective because 1) he did not raise certain issues requested by petitioner and 2) counsel's presentation of the issues that he did raise and argue was inadequate and did not include federal constitutional arguments.

On September 15, 1986, the Supreme Court, Kings County, denied petitioner's motion to vacate his judgment of conviction (Lawrence, J.). By order dated January 6, 1987, petitioner's application for leave to appeal to the Appellate Division, Second Department, from the denial of his motion to vacate his judgment of conviction was denied. (Weinstein, J.).

By *pro se* application dated May 27, 1987, petitioner brought a petition under 28 U.S.C. § 2254, for a writ of *habeas corpus* in the United States District Court, Eastern District of New York. Petitioner claimed: 1) that the evidence at trial was insufficient to support his conviction; 2) that he received ineffective assistance of appellate counsel because counsel filed a brief deficient in setting forth the facts, identifying the issues and arguing the law; and 3) that appellate counsel's assistance was also ineffective because counsel failed to raise any federal constitutional arguments, thereby barring petitioner from obtaining any relief on these grounds by federal writ of *habeas corpus*.

While his petition was still pending before the United States District Court, petitioner moved to withdraw his petition for a writ of *habeas corpus* without prejudice. Petitioner stated that hid petition would be resubmitted after he had fully exhausted state remedies by challenging appellate counsel's effectiveness by way of a motion for a writ of error coram nobis. District Judge Mark A. Constantino dismissed the petition "so that petitioner, as per his request, may exhaust his state remedies." *Motion to Withdraw Writ Without Prejudice,* (Order filed, October 11, 1987).

Nevertheless, on October 21, 1987, the United States District Court, Eastern District dismissed, without prejudice, petitioner's application for a writ of *habeas corpus.* (Constantino, J.) The court held that petitioner had failed to exhaust his state remedies because he had not challenged his appellate counsel's effectiveness by moving for a writ of error *coram nobis* proceeding as required by *People v. Bachert,* 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987).

On December 10, 1987, petitioner moved in state court for a writ of error *coram nobis* on the ground that his appellate attorney's conduct constituted ineffective assistance of counsel and denied him due process of law. On October 27, 1988, the Appellate Division, Second Department, denied petitioner's petition for a writ of error *coram nobis.* The court held that petitioner's appellate counsel had satisfied clearly the constitutional standard of effective assistance of appellate counsel set forth in *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

By *pro se* application dated March 30, 1989, petitioner brings this petition pursuant to 28 U.S.C. § 2254, for a writ of *habeas corpus* in the United States District Court, Eastern District of New York. Petitioner alleges identical claims to those he asserted in his petition that was dismissed without prejudice on October 21, 1987. Specifically, petitioner claims: 1) that he received ineffective assistance of appellate counsel because counsel filed a brief deficient in setting forth the facts, identifying the issues and arguing the law; 2) that appellate counsel's assistance was also ineffective because counsel failed to raise any federal constitutional arguments, thereby barring petitioner from obtaining any relief on these grounds by federal writ of *habeas corpus;* and 3) that the evidence at trial was insufficient to support his conviction. Counsel was appointed to represent petitioner on his *habeas corpus* petition on June 16, 1989.

### Statement of Facts

#### A. Underlying Crime

On the night of April 19, 1980, Michael Grey, Kenneth Moss, Lloyd Grey ("Lloyd"), Randolph Gatson, Kevin Harris and Allen Taylor, along with approximately two hundred others attended a party at the Shulman–Cohen Jewish War Veteran's Post (the "Post") in celebration of Harris' birthday. Working at the Post in the coat room that night were Morris Panzer, the caretaker of the Post, and his grandson. Panzer and his grandson were charging fifty cents per coat.

At approximately 3:00 a.m., the party ended. After the party ended, Grey, Moss, Lloyd, Gatson, Harris and Taylor each helped at different times to pack up various pieces of stereo equipment and carry them to a station wagon for eventual transport. The station wagon was positioned in front of the Post and parked so that the opened hatch of the wagon faced the front door of the Post. On one of the last loading trips to the station wagon, both Moss and Lloyd carried a large speaker out of the Post. The whole group lifted it up and attempted to secure it to the roof.

Gatson testified that while loading the speaker onto the car, he observed in the car's open hatch "a polished piece of wood sticking out of a paper plastic bag." (Tr. 152) About the time when Moss was carrying the speaker to the car, Moss told Lloyd that "he needed money" and "wanted to stick somebody up." (Tr.92) At which point, Lloyd responded that "it was not worth it." After this conversation, Lloyd and Taylor returned to the Post to remove more equipment. Gatson and Harris remained outside the Post. Grey was not present during this conversation.

It was during this time, that Harris overheard heard Moss say to Grey "[s]hould we do it?" (Tr.260) Grey did not respond. Both Moss and Grey were standing outside near the car when this conversation took place. (Tr.260)

Just after the speaker was placed on the roof, Grey asked Gatson, who was sitting in the car, if Panzer, the caretaker, had any contract with their names and addresses. (Tr.146, 206, 261) After which Grey walked to the back of the station wagon.

(Tr.148) Gatson then saw Moss walk to door of the Post and ask Grey, who was standing at the back of the station wagon, "[d]o you have it." (Tr.148, 150, 198) Harris then heard the sound of rumpled paper and saw Grey carrying a plastic bag with the barrel of a gun sticking out. (Tr.263)[1] Grey returned from the door of the Post with plastic balled up. (Tr.263)

After both Taylor and Lloyd got into the car, they heard two explosions. At the time of the explosion, Gatson, Taylor, Harris, and Lloyd were seated in the car and Grey stood at the back of the car near the hatch. Moss then proceeded to leave the Post. Harris testified that when Moss left the Post he walked to the back of the station wagon where Grey was standing. (Tr.271)[2]

The next morning, the bodies of Panzer and his grandson were found in the Post's bathroom. Both were pronounced dead as a result of gunshot wounds.

## B. *Appellate Representation*

Grey was represented by the same retained counsel both at the trial and appellate level. This petition alleging ineffective assistance of counsel stems from Grey's dissatisfaction with the way counsel proceeded on appeal.[3] Grey states that after receiving a copy of his appellate brief, he wrote appellate counsel a letter dated April 24, 1984, commenting on how he believed the brief to be deficient. *Letter*, at 1–3.[4]

Grey alleges that counsel never responded to him and that counsel proceeded to submit the unsatisfactory brief to the Appellate Division and to apply for leave to appeal to the New York State Court of Appeals without first consulting with him. Grey asserts that he found out that he lost

his appeal and that he was denied leave to appeal when counsel eventually spoke with his family. At that time, Grey's right to submit a *pro se* brief had expired.

Grey's appellate counsel, in an affidavit, dated May 7, 1991, responded to Grey's allegations. In his affidavit, counsel states that he no longer has any of the files concerning Grey's case. *Anthony v. Lombardino's Affidavit*, dated May 7, 1991, p. 1. Nevertheless, certain crucial facts can be ascertained regarding appellate counsel's communication with petitioner from an analysis of the District Attorney's records, Grey's letter to counsel of April 23, 1984 and counsel's normal office procedure.

Appellate counsel's affidavit indicates that his brief was served on the Kings County District Attorney's Office on September 22, 1983. *Affidavit*, at 2. On information and belief, Mr. Lombardino states in his affidavit that based on his normal practice, he files his brief with the Appellate Division about the same day that he serves the District Attorney and that he sends a completed brief to his client on the same day it is filed with the court. *Id.* Thus, based on these practices Grey should have received his copy of the brief sometime in late September or early October, 1983.

Further, Grey's letter to counsel establishes that Grey was aware that Mr. Lombardino had filed his brief with the District Attorney. Specifically, Grey states in his letter that "I would like you to submit a supplemental brief before the district attorney replys [to] the one you have already submitted." *Letter*, at 3. Accordingly, Grey appears to have been in receipt of his brief for a maximum of approximately six

---

1. However, Taylor testified that he never saw Grey enter the Post nor carry anything in a plastic bag. (Tr.439–44) Additionally, Lloyd testified that he never saw Grey pass anything to Moss. (Tr.112)

2. Gatson also testified that he heard Grey at some point say "I don't want to have anything to do with this." (Tr.197, 232)

3. Grey does not contend that counsel was ineffective at the trial level. In fact, Grey in his

letter expressing dissatisfaction with counsel's appellate representation specifically states that "you did an excellent job" in handling my trial. *Michael Grey's Letter to Anthony Lombardino*, dated April 23, 1984 (the "Letter").

4. "Petitioner's letter to appellate counsel dated April 23, 1984 was an intelligent analysis and critique of the appellate brief." *Grey v. Henderson*, CV 89–1004 (E.D.N.Y. June 16, 1989) (Judge Weinstein's Order appointing counsel).

or seven months before objecting to its contents.[5]

In conclusion, Mr. Lombardino states that he has no recollection of receiving Grey's letter. Counsel notes that

> [w]hen I send clients briefs that have already been filed, my usual practice is to tell them to let me know if they have other issues they wish to raise and that we will then discuss the possibility of addressing those issues in a supplemental brief or in a *pro se* brief. Given Mr. Grey's instructions to me to let him know whether I would file a supplemental brief, and his indication of his willingness to file a *pro se* supplemental brief if I chose not to raise the additional issues, I assume that I must have followed my usual practice, although I cannot be absolutely certain. That is, it would seem that I sent Mr. Grey the completed brief, told him to contact me if he wanted to raise any additional issues, and told him that we would discuss how best to raise any further issues he wished to raise.

*Affidavit,* at 4. Mr. Lombardino concludes stating that he "can only surmise at this point that I either did not receive Mr. Grey's letter or if I did receive it, I answered it and my response did not reach Mr. Grey. Alternatively, it is also possible that I inadvertently failed to respond to Mr. Grey's letter." *Affidavit,* at 4.

### Discussion

Grey contends that he was deprived of effective assistance of appellate counsel. Petitioner asserts that after he analyzed the appellate brief defense counsel prepared, counsel then ignored a letter apprising him of certain deficiencies in the brief. Specifically, Grey alleges that defense counsel ignored his request to include certain issues in his direct appeal, included issues which were not likely to succeed and failed to properly brief other issues.[6]

**5.** The court cannot determine when Grey actually received counsel's brief.

**6.** This court will assume *arguendo* that appellate counsel failed to consult with his client.

## I. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

An appeal as of right does not accord with due process unless the petitioner has the effective assistance of counsel. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). A petitioner challenging his conviction based on a claim of inadequate representation bears the burden of showing that his attorney's performance "fell below an objective standard of reasonableness," and that but for this error, there is a "reasonable probability" the outcome would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). The court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* at 694, 104 S.Ct. at 2068. The *Strickland v. Washington* analysis, which is usually applied to ineffective trial representation, is also applicable to appellate representation.[7] *Abdurrahman v. Henderson,* 897 F.2d 71 (2d Cir.1990); *Pendleton v. Scully,* 664 F.Supp. 100, 104 (S.D.N.Y.1987).

A claim of ineffective assistance of counsel requires a particularized showing of an identifiable lapse in performance of the attorney which when viewed under a "highly deferential" standard nevertheless falls "outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. at 669, 690, 104 S.Ct. at 2055, 2066. This "requires showing that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 685, 104 S.Ct. at 2063.

Superimposed on the two-part *Strickland* test is the Supreme Court's ruling in *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). In *Jones,* the Supreme Court set out a framework for determining whether there has been ineffective assistance by appellate counsel. The court established in *Jones*

**7.** The Supreme Court has not yet enunciated standards for determining what constitutes ineffective assistance of appellate counsel. *See Evitts,* 469 U.S. at 392, 105 S.Ct. at 834.

that defense counsel on an appeal does *not* have a constitutional duty to raise every nonfrivolous issue requested by the defendant. While the Supreme Court in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 *reh'g denied*, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967), recognized that the role of the advocate requires that he or she support the client's appeal to the best of his ability, the *Jones* Court ruled that it is a matter of professional judgment whether to present those points advanced by the defendant. *See Jones*, 463 U.S. at 754, 103 S.Ct. at 3314.

Emphasizing the importance of having the appellate advocate select what in the exercise of best professional judgment are the most promising issues for review, the Supreme Court ruled that appointed counsel has no obligation "to raise every colorable claim suggested by a client." *Jones*, 463 U.S. at 754, 103 S.Ct. at 3314. The court concluded that judges should not "second guess reasonable professional judgments." *Id.* Counsel's decision to raise some issues but not others is a strategy decision which does not automatically warrant a finding defendant was inadequately or ineffectively represented. *See Jones*, 463 U.S. at 753, 103 S.Ct. at 3314.

■ Although *Anders* is not directly applicable herein, it is instructive that petitioner did not have the benefit of voicing his own theories as would have been possible under the procedures formulated in *Anders*. In *Anders*, the Supreme Court formulated a procedure whereby an attorney could withdraw from the case where *no* meritorious appellate issues exist. This procedure requires that once an appellate attorney after a conscientious examination of the record finds that the appeal is wholly frivolous, counsel should advise the Court of such and request permission to withdraw. Such a request should be accompanied by a brief reciting the underlying facts and highlighting anything in the record that might arguably support the appeal. Petitioner *should be furnished with a copy of the brief and given an opportunity to raise any points he chooses.* The Court would then examine all of the proceedings to determine whether the appeal is wholly frivolous. If such a finding is made, the Court would grant counsel's request to withdraw and affirm the judgment.[8] *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. However, since in the instant case, appellate counsel did submit a brief with numerous meritorious issues; the fact that petitioner *might* not have received a copy of counsel's brief in time to file with the court a *pro se* supplemental brief does not violate petitioner's Sixth Amendment right to counsel.

Such action by counsel was found to be proper in *Smith v. Cox*, 435 F.2d 453 (4th Cir.1970), *vacated on other grounds, Slayton v. Smith*, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971). In *Smith* the court found that counsel's failure to confer with petitioner and proceeding to appeal solely on the basis of the trial transcript did not amount to a denial of petitioner's right to effective assistance of counsel. Relying on *Anders*, the circuit court concluded

that counsel should ordinarily consult with his client at least once to ascertain his clients desires with regard to the alleged trial errors which the appellant wishes to press, ... but however desir-

---

**8.** New York State law requires that when a client asserts both meritorious and non-meritorious claims the procedure to be followed

is to argue the claims found meritorious and make no comment about claims considered frivolous. As to them, counsel should instruct his client why he believes the points frivolous and advise him that if he still thinks they should be addressed, defendant may file a *pro se* brief with the court. If the client chooses to do so, counsel should protect his client's opportunity to submit written argument on the points by notifying the court of the client's intentions.

*People v. Vasquez*, 70 N.Y.2d 1, 516 N.Y.S.2d 921, 509 N.E.2d 934 (1987). The New York Court of Appeals noted that *Vasquez* addressed merely the ethical obligation counsel owes a client and did not create any right on behalf of indigent defendants to act as co-counsel on appeal when represented by counsel who present nonfrivolous issues. *People v. White*, 73 N.Y.2d 468, 477, 541 N.Y.S.2d 749, 754, 539 N.E.2d 577, 582, *cert. denied*, 493 U.S. 859, 110 S.Ct. 170, 107 L.Ed.2d 127 (1989).

able, ... we can not say that it is required by the Constitution *Smith*, 435 F.2d at 458–459. The Court in *Smith* anticipated the Supreme Court's ruling in *Jones* by rejecting the creation of a duty for counsel to press arguments initiated by one's client which may arguably be supported, even though not personally espoused by counsel.

In *United States ex rel. Russo v. Attorney General of Illinois*, 780 F.2d 712 (7th Cir.), *cert. denied*, 476 U.S. 1185, 106 S.Ct. 2922, 91 L.Ed.2d 550 (1986), the court noted that although it is "highly desirable", it is not constitutionally required that counsel consult with the petitioner prior to the filing of his motion to withdraw under *Anders*. There, petitioner's constitutional rights were sufficiently protected when he received a copy of his *Anders* brief and was given adequate time to inform the court of any arguments he wished to raise on appeal. Here, petitioner alleges that this "adequate time" was not provided.

Thus, the question becomes on which side of the Sixth Amendment line does counsel's behavior fall.[9] This is clearly not a case where a writ should be granted when an petitioner had received, "no counsel, or at best, nominal counsel" on his state appeal. *Jenkins v. Coombe*, 821 F.2d 158, 161 (2d Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988) (*Strickland* test inapplicable where petitioner submitted his own *pro se* brief after appointed counsel was removed prior to appeal and no replacement was assigned); *Simmons v. Reynolds*, 708 F.Supp. 505, 510 (E.D.N.Y.1989), *aff'd*, 898

F.2d 865 (2d Cir.1990) (failure to perfect an appeal resulting in a six year delay before appeal was heard is ineffective assistance of appellate counsel).

Nor is this a case where writs have been universally denied when counsel and petitioner have each communicated with each other.[10] *Cantone v. Superintendent, New York Correctional Fac.*, 759 F.2d 207 (2d Cir.), *cert. denied*, 474 U.S. 835, 106 S.Ct. 109, 88 L.Ed.2d 89 (1985) (petition dismissed where appellate counsel allegedly *agreed* to brief a particular issue, which ultimately was not included in the brief); *McCrae v. Blackburn*, 793 F.2d 684, 688 (5th Cir.), *cert. denied*, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986) (petition dismissed where petitioner claimed that counsel was ineffective because he was "unfamiliar with the trial court proceedings and without first properly consulting with ... [petitioner], filed an appeal approximately twenty-two months after ... [petitioner's] sentencing"); *Hamilton v. McCotter*, 772 F.2d 171, 182 (5th Cir.1985) (petition dismissed where petitioner did not provide any specifics about issues which appellate counsel allegedly refused to raise); *Cunningham v. Henderson*, 725 F.2d 32, 35 (2d Cir.1984) (petition dismissed where petitioner wrote to appellate counsel requesting certain issues be briefed and attorney *responded* to petitioner that he would not incorporate them in his brief, but petitioner could file a supplemental brief with the court if he desired); *Gulliver v. Dalsheim*, 739 F.2d 104, 107 (2d Cir.1984) (petition dismissed where counsel briefed six points in appellate brief and *communi-*

---

**9.** In *People v. Rawlings*, 150 A.D.2d 619, 541 N.Y.S.2d 488 (2nd Dept.1989), a fact pattern close to the case at bar, arose where assigned counsel filed an Anders brief indicating no viable legal issues and, thereafter, submitted to the court a letter from defendant which set forth certain issues which the defendant sought to have reviewed. The court held that new counsel be assigned and the appeal deferred because *"it does not appear that counsel ever informed the defendant that he thought such claims were frivolous and that the defendant could raise such claims in a pro se brief." Rawlings*, 541 N.Y.S.2d at 489 [emphasis added]. *Rawlings* seems to stand for the proposition that under New York State law when there are *no* meritori-

ous issues, appellate counsel *must* inform *his* client of this, so as to give him an opportunity to submit a *pro se* brief.

**10.** There are a plethora of cases where writs of habeas corpus were denied because the action of appellate counsel had not fallen below the standards espoused in *Strickland*. However, in many of these cases, the issue of whether there had been bilateral communication between appellant and his counsel before the appeal had been submitted to the state court was glossed over in both the recitation of the facts and analysis of case law. Accordingly, these cases are not helpful.

*cated* with petitioner saying that his appeal was hopeless); *Heath v. Hoke,* 1989 WL 153759, (W.D.N.Y.1989) (petition dismissed where petitioner requested his attorney to include certain points in his appellate brief, and attorney instead attached petitioner's *pro se* brief to counsel's own brief); *Buitrago v. Scully,* 705 F.Supp. 952, 955 (S.D.N.Y.1989) (petition dismissed where petitioner contended that appellate counsel was ineffective because he did not seek petitioner's opinion as to the issues which petitioner thought might be meritorious and should be briefed by counsel on appeal); *Patterson v. Scully,* 621 F.Supp. 524, 527 (S.D.N.Y.1985) (petition dismissed where appellate counsel did not inform petitioner of precise date appeal was submitted, but did *inform* petitioner that no viable issues existed).

### A. Issues Raised in Grey's Letter to Appellate Counsel

#### 1. Sufficiency of the Evidence

■ Counsel competently recited the facts of the case. The factual portion of the brief filled eleven pages. Grey alleges that additional facts regarding Kevin Harris' testimony should have been included in the discussion portion of the brief. Although more factual analysis might have been included in the discussion section, counsel did include two full pages describing Harris' testimony in the fact portion of the brief. Such appellate advocacy writing does not approach what is necessary for an ineffective assistance of counsel claim to prevail. Contrary to petitioner's allegations, appellate counsel's citation to *People v. LaBelle,* 18 N.Y.2d 405, 276 N.Y.S.2d 105, 222 N.E.2d 727 (1966), *People v. Monaco,* 14 N.Y.2d 43, 248 N.Y.S.2d 41, 197 N.E.2d 532 (1964), *People v. Vitalis,* 67 A.D.2d 498, 415 N.Y.S.2d 708 (2nd Dept. 1979), and *People v. Washington,* 60 A.D.2d 897, 401 N.Y.S.2d 297 (2nd Dept. 1978), did stand for the propositions asserted and were sufficient to alert the appellate division to examine the issue of sufficiency of the evidence presented at trial.

■ Further, even if counsel included in the brief the facts urged by Grey, the jury could have found beyond a reasonable doubt that Grey was guilty of felony murder. In assessing Grey's claim, a federal court hearing a *habeas corpus* petition is required to consider the trial evidence in the light most favorable to the State, upholding the conviction if " '*any* rational trier of fact' could have concluded beyond a reasonable doubt that Grey had the required intent." *Reddy v. Coombe,* 846 F.2d 866, 869 (2d Cir.), *cert. denied,* 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988) (remanded on other grounds) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) [emphasis in original]. Therefore, a court reviewing a *habeas corpus* petition must credit every inference that could have been drawn in the State's favor. *Reddy,* 846 F.2d at 869. Applying this standard, regardless of what appellate counsel could have added to this argument, this court finds there to have been sufficient evidence to support the conviction.

#### 2. Missing "mere presence" instruction

■ Intertwined with Grey's contention that there was insufficient evidence to support a conviction, is his contention that the trial court's failure to charge on "mere presence" is reversible error.[11] Although the court did not instruct the jury regarding "mere presence," omission of such term was not reversible error. "The court's charge did include a proper instruction regarding accessorial conduct, as well as clear instructions on intent as an element of each crime and on circumstantial evidence, including the necessity to exclude beyond a reasonable doubt all hypotheses consistent with defendant's innocence." *People v. Green,* 137 A.D.2d 713, 524 N.Y.S.2d 796 (2nd Dept.1988); *see United States v. Perkins,* 926 F.2d 1271, 1283–1284 (1st Cir.1991).

Furthermore, proof at trial demonstrated more than petitioner's mere presence at the scene of the robbery. The evidence estab-

---

**11.** Since petitioner treats this allegation separately from the other alleged errors in connec-

tion with the jury charge, the court will do likewise.

lished that Harris heard either Grey or his codefendant ask, "should we do it?" (Tr. 260), followed by Grey asking Harris whether Panzer had a contract with his name and address on it. (Tr.146) This was followed by a conversation where Moss asked Grey "[d]o you have it" (Tr.148) which was confirmed by Harris' eyewitness testimony that he saw Grey carry a plastic bag into the Post with a barrel of a gun protruding from the bag (Tr.263). *See People v. Bolden,* 161 A.D.2d 1126, 556 N.Y.S.2d 415 (4th Dept.1990).

■■■ Grey maintains that appellate counsel was deficient for failing to cite *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) in point three of the brief. In *Enmund,* the Supreme Court rejected the death penalty as punishment for felony murder based on accomplice liability. The Court noted that criminal culpability must be limited to participation in a robbery and that punishment must be tailored to personal responsibility and moral guilt. *Enmund,* 458 U.S. at 801, 102 S.Ct. at 3378. At best, counsel's cite to *Enmund* would be merely for background purposes and at that probably in a parenthetical. Counsel's argument, while it could have been stronger does not fall below the *Strickland* standard. Specifically, in light of the consequences to the petitioner in *Enmund,* the standard for death sentences is irrelevant as to a New York conviction for felony murder.

### 3. Other Alleged Errors in Jury Instructions

■■■ Grey contends that the state court's jury instruction denied him his right to a fair trial by failing (1) to charge the jury that intent is a necessary element of robbery; (2) to properly charge on "interested witnesses"; (3) to respond adequately to the jury request to further explain the law pertaining to felony murder and reasonable doubt; (4) to properly marshall the evidence; and (5) to properly charge on "circumstantial evidence". "A jury charge in a state trial is normally a matter of state law and is not reviewable on federal *habeas corpus* absent a showing that the al-

leged errors were so serious as to deprive defendant of a federal constitutional right." *United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir. 1974), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975); *see* 28 U.S.C. § 2254.

> Before a federal court may overturn a conviction resulting from a state trial in which ... [a particular] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

*Montanye,* 505 F.2d at 1359, *citing (Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 [1973] ). The question is whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400. While the trial court in the instant case did not charge that

> it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence,

as was suggested in *People v. Sanchez,* 61 N.Y.2d 1022, 475 N.Y.S.2d 376, 463 N.E.2d 1228 (1984), the trial court did "in substance," (*Sanchez,* 61 N.Y.2d at 1022, 475 N.Y.S.2d at 377, 463 N.E.2d at 1229) charge the same stating:

> that [w]hen all the material facts taken together lead naturally, logically, irresistibly and exclusively to the conclusion of a defendant's guilt, and are at the same time inconsistent with a defendant's innocence, then you have a satisfactory form of proof which a jury may not disregard.

(Tr.650).

Grey is incorrect in alleging that the state trial court failed to instruct the jury that intent was required to establish the underlying robbery for the felony murder charge. In fact, the court did instruct the jurors that in order to find the defendants

guilty of felony murder, they were required to find that the defendants intended to commit the underlying felony of robbery or attempted robbery. The court did just that when instructing the jurors that

> [i]f you find that Michael Grey, with the intent that acts or conduct constituting robbery or attempted robbery be performed, that he intentionally solicited, requested, commanded, or importuned Kenneth Moss to commit the crime of robbery, or attempted robbery

(Tr.658, 661–663).

Grey's second claim of error to the trial court's charge was the judge's failure to marshal the evidence. This claim does not rise to constitutional dimensions. *See People v. Wilson*, 107 A.D.2d 830, 484 N.Y.S.2d 670 (2nd Dept.1985). The court need marshal the evidence only to the extent necessary to explain the application of the law to the facts. *See People v. Saunders*, 64 N.Y.2d 665, 485 N.Y.S.2d 250, 474 N.E.2d 610 (1984). Here, petitioner's case was relatively simple; there was only one witness. *See* N.Y.Crim.Proc.Law § 300.-10(2) (New York does not require a trial court judge to marshal the evidence). This is not a case where a trial judge unfairly marshalled the evidence in favor of one side. In this case there was simply no need to marshal the evidence. *See People v. Williamson*, 40 N.Y.2d 1073, 392 N.Y.S.2d 255, 360 N.E.2d 933 (1976).

Third, the allegation that failure to brief the issue that the jury charge was erroneous because it failed to include instructions on "interested witnesses" is similarly meritless. The trial court properly instructed the jury on this point. (Tr.636–640) *See People v. Karchefski*, 102 A.D.2d 856, 476 N.Y.S.2d 916 (2nd Dept.1984). Moreover, this claim was not preserved for appellate review. *See Gonzalez v. Sullivan*, 934 F.2d 419, 421 (2d Cir.1991). The failure to brief the "interested witness" issue does not amount to ineffective assistance of appellate counsel. *See United States v. Torres*, 845 F.2d 1165, 1172 (2d Cir.1988) (trial counsel's errors in failing to seek "interested witness" instruction does not rise to the level necessary to overcome the presumption that counsel's performance was reasonable under *Strickland*"); *Matos v. Miles*, 737 F.Supp. 220, 223 (S.D.N.Y.1990).

"It is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Leecan v. Lopes*, 893 F.2d 1434, 1444 (2d Cir.), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990) (*quoting Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 [1977]). A state appellate court would only review such a claim in the interest of justice and given the other issues which counsel argued, the existence of unpreserved issues in the brief might have lessened the impact of other more meritorious assertions.

Lastly, the trial judge's repetition of the same language used in the initial charge when asked by the jury for further instructions on the law of felony murder and reasonable doubt does not render the charge unconstitutional. *See Davis v. Greer*, 675 F.2d 141 (7th Cir.), *cert. denied*, 459 U.S. 975, 103 S.Ct. 310, 74 L.Ed.2d 289 (1982) (instructions proper where trial court answered jury's question by directing the jury to reread the instructions carefully; instructions which clearly and carefully stated the controlling law). In the instant case, the trial judge merely repeated his initial charge on felony murder and reasonable doubt. Just as in a supplemental jury charge which is legally correct, a trial judge has broad discretion in determining how, and under what circumstances, a charge will be given. *United States v. Civelli*, 883 F.2d 191, 195 (2d Cir.), *cert. denied*, 493 U.S. 966, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989).

Whether or not the jury charge under consideration here is reversible as a matter of state law, each of the alleged errors, individually or in combination are not of constitutional magnitude. Petitioner received a full and fair hearing and the trial judge's charge did not deprive petitioner of his fundamental right to due process of law.

### 4. Severance Issue

The right to take the stand in one's own defense is deemed rooted in constitutional law. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Ferguson v. Georgia*, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). Petitioner's claim that he was prevented from taking the stand is a very serious accusation. Accordingly this court has thoroughly reviewed Mr. Grey's claim.

■ Grey asserts that appellate counsel's brief was deficient in not citing to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1967), or any other federal cases, thereby precluding *habeas corpus* review in federal court. Grey's claim lacks merit. Not only is this not a *Bruton*-type case [12], but appellate counsel did refer to *People v. Payne*, 35 N.Y.2d 22, 358 N.Y.S.2d 701, 315 N.E.2d 762 (1974), a leading Court of Appeals case dealing with severance. The *Payne* case in turn cited *Bruton* as the starting point for determining when a severance should be granted. Under New York and federal law,

> the question whether a motion to consolidate or a motion to sever should be granted is committed to the sound discretion of the trial court, and will be reversed on appeal only where the defendant suffered such prejudice from a joint trial ... that the trial court may be said to have abused its discretion by refusing separate trials.

*Alejandro v. Scully*, 529 F.Supp. 650, 651 (S.D.N.Y.1982).

■ Habeas review of a state court's denial of a severance is even more limited than direct appellate review. *Id.* Petitioner can only mount a successful *habeas corpus* attack against a state trial court's decision on a request for severance, if petitioner can show that the trial was so prejudicial as to actually render the petitioner's state trial fundamentally unfair and hence violative of due process. *See Id.* at 651–

652. The desire of one defendant to exculpate himself by inculpating another have been held to be insufficient grounds to require separate trials. *See Maddux v. Rose*, 483 F.Supp. 661, 670 (E.D.Tenn.), *aff'd*, 627 F.2d 1091 (6th Cir.1980).

■ Specifically, despite the trial court's *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974) ruling prior to selection of the jury (Tr.26), that the prosecution could use Grey's prior assault conviction resulting in a youthful offender adjudication, the prosecution later stated that it would not use such conviction on cross-examination if Grey testified. (Tr. 453–465, 533–534) At which time, codefendant's attorney stated that he would not be bound by the prosecution's concession and that he would use such conviction during the cross-examination of Grey. Nevertheless, the trial judge gave trial counsel the opportunity to further consult with Grey regarding testifying on his own behalf. (Tr.463)

Grey's attorney then moved for a severance and mistrial which were denied by the trial court. The defense rested without calling Grey to the witness stand. Thus, Grey alleges that he was constructively denied his right to a fair trial and not permitted to present a complete defense.

A motion for a severance is addressed to the sound discretion of the trial court and its decision will not be overturned absent a showing of an abuse of discretion. *See* (N.Y.C.P.L. § 200.40[1]); *People v. Bornholdt*, 33 N.Y.2d 75, 350 N.Y.S.2d 369, 305 N.E.2d 461, *cert. denied*, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974); *see also United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir.1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984) (denial of severance "will be reversed only upon the appellant's successfully assuming the heavy burden of showing that he suffered substantial prejudice due to joint trial").

---

**12.** *Bruton* held that admission of a confession of a non-testifying co-defendant, and which inculpates defendant, violates the defendant's right of cross-examination and is therefore grounds for severance. Since co-defendant did not confess or even make a statement, citing *Bruton* at best would merely be helpful in constructing a very tenuous analogy.

Grey's claim that he was denied the right to testify is meritless. In *People v. McGee,* 68 N.Y.2d 328, 508 N.Y.S.2d 927, 501 N.E.2d 576 (1986), the New York Court of Appeals distinguished between the aims of cross-examination by the prosecutor and by the codefendant.[13] The court stated:

> [t]he prosecutor, in questioning defendant, seeks to incriminate him directly or indirectly by attacking his credibility. Counsel for codefendant seeks to protect his client. In conducting his cross-examination, counsel for codefendant exercises his client's right of confrontation (citations omitted). Of this right we have said: 'it should be too obvious to need reiteration that restriction on the right to cross-examine key prosecution witnesses can deprive a defendant of an important means of combating inculpatory testimony or at least demonstrating the existence of a reasonable doubt as to guilt (citations omitted)'. This basic right of a defendant to cross-examine witnesses does not disappear because the witness against him is a codefendant.

*Id.* at 333, 508 N.Y.S.2d 927, 501 N.E.2d 576. The court therefore held that a *Sandoval* ruling made with respect to one defendant was not binding upon the codefendant.

The New York Court of Appeals in *People v. Mahboubian,* 74 N.Y.2d 174, 184–185, 544 N.Y.S.2d 769, 774, 543 N.E.2d 34, 39 (1989), a case where neither codefendant testified, concluded

> that severance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt. In that motions for severance typically arise at the pretrial stage or in the course of trial, the trial court must apply this standard prospectively, based on its discretionary assessments of the strategies and evidence as forecast by the parties.

In *Mahboubian,* it was "plain from the outset" that the "defenses were not only antagonistic, but also mutually exclusive and irreconcilable. *Id.* at 185, 544 N.Y.S.2d at 774, 543 N.E.2d at 39. The conflict of defenses was brought to the court's attention before trial began—created the sort of compelling prejudice that could have been avoided by the grant of the requested severance." *Id.* at 186, 544 N.Y.S.2d at 776, 543 N.E.2d at 40. There, the "jury could not have credited both defenses." *Id.* at 185, 544 N.Y.S.2d at 774, 543 N.E.2d at 39.

Scrutiny of the transcripts reveal that Grey at no time requested a severance because his defense was antagonistic to that of his codefendant. Nor did the codefendant seek a severance on such ground. Although the evidence was circumstantial as to who did the shooting and that counsel for Moss indicated he would use Grey's prior bad act on cross-examination, Moss's counsel *never* stated that it was his client's position that Grey shot Mr. Panzer and his grandson. Consequently, the trial court was not apprised when making the *Sandoval* ruling or deciding the motion for a severance and mistrial that the defendant and codefendant had antagonistic defenses.

 The movant must first demonstrate by concrete evidence that the defendants' positions are antagonistic to one another, such that the joinder of trials, which arose out of the same circumstances and crimes, deprived him of a fair trial. *People v. Martin,* 154 A.D.2d 554, 546 N.Y.S.2d 394 (2nd Dept.1989); *People v. Larkin,* 135 A.D.2d 834, 523 N.Y.S.2d 131 (2nd Dept. 1987). When the possibility of one defendant testifying in a manner antagonistic to another defendant is merely colorable or speculative, the court has discretion to deny the severance motion. *People v. Johnson,* 124 A.D.2d 1063, 508 N.Y.S.2d 728 (4th Dept.1986). "Where proof against the defendants are supplied by the same evidence only the most cogent reasons warrant a severance." *Bornholdt,* 33 N.Y.2d

**13.** This case is unusual in that while Grey is the petitioner and is claiming that his right to testify was denied him because of co-defendants strategy to cross-examine him on a prior conviction, Grey's claim must be analyzed by looking at the rights of his co-defendant at a joint trial to confront his accuser.

at 87, 350 N.Y.S.2d at 378, 305 N.E.2d at 467. When defendants are tried jointly, the *Sandoval* ruling with respect to one does not limit the scope of the cross-examination of the other defendant. *McGee,* 68 N.Y.2d at 328, 508 N.Y.S.2d at 927, 501 N.E.2d at 576. One codefendant's cross-examination of another is merely the exercise of one's right to confront their accuser. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

In the instant case, Grey's counsel never articulated to the trial judge any antagonistic defenses between Grey and Moss. Counsel's failure to articulate any antagonistic defense prevented the trial judge from assessing the "strategies and evidence as forecast by the parties." *Id.* At best, counsel for Grey merely claimed that because Moss would cross-examine him on his prior crime, he would not take the stand. This is not sufficient articulation of a possible conflict of defenses to warrant a finding that the trial court abused its discretion in denying a severance. Unlike irreconcilable defenses, Grey's voluntary decision not to be impeached does not reach the constitutional magnitude requiring the granting of a writ of *habeas corpus. See People v. Baez,* N.Y.L.J., March 22, 1991 at 23, col. 2 (N.Y.Sup.Ct.) (court granted a severance because the defendants prior to trial a showing that their respective defenses were antagonistic).

Grey's counsel offered "no evidence to support the claim that but for the joint trial the defendant would have testified to facts that were in some way antagonistic to the co-defendant's position." *People v. Martin,* 154 A.D.2d 554, 546 N.Y.S.2d 394 (2nd Dept.1989). (Tr.454–466) Grey's counsel did not offer proof as to what Grey's testimony would be, but offered merely conclusory assertions that it would be inimical to his client's position. *Johnson,* 124 A.D.2d at 1063, 508 N.Y.S.2d at 729. Likewise, in *People v. Sanders,* 162 A.D.2d 327, 556 N.Y.S.2d 903 (1st Dept.1990), no abuse of discretion was found in denying severance where, on eve of trial, after a *Sandoval* hearing, defendant moved for severance on the ground that if he took the stand, his codefendant, who was not bound by the *Sandoval* ruling, could cross-examine him as to all his prior convictions, thus inhibiting defendant from testifying on his own behalf. As in *Sanders, Martin, Johnson* and in the instant case, trial counsel failed to state sufficient facts to demonstrate how his position was antagonistic to his codefendant. It is evident that given the evidence at trial Grey would not have been successful with the jury or upon direct appeal or even under the more rigorous standards required in *habeas corpus* proceedings. *See Alejandro,* 529 F.Supp. at 651.

5. Failure to Cite Federal Case Law

██ Grey's contention that counsel's failure to cite federal cases in his appellate brief is also without merit. Grey contends that without citing to federal case law, his counsel was constitutionally deficient. Grey alleges that such a failure to cite federal cases would prevent his claims from being brought in a petition for *habeas corpus* before a federal court.

A similar type of argument was raised in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). In *Wainwright,* the Supreme Court ruled that when defense counsel failure to object results in a procedural bar, the default can be remedied by showing cause for the default and actual prejudice. Thus if cause and actual prejudice are established, the fact that counsel erred at trial would not prevent the procedurally barred issue from being heard. Accordingly, if an issue goes to the heart of a constitutional right, appellate counsel's failure to cite a federal case for a particular proposition would not prevent a federal court from reviewing such an issue in a petition seeking a writ of *habeas corpus.*

██ Moreover, failure to cite federal case law would not prevent a state court from deciding an issue based on federal law. In *United States ex rel. Patterson v. Neal,* 678 F.Supp. 749 (N.D.Ill.1988), the government alleged that petitioner's ineffective assistance of counsel claim should be barred from review because it was not

**698**

properly raised on appeal. The court rejected this contention and noted that a party is not required to rely on federal cases to alert a state court to constitutional issues. *Id.* at 753. Rather,

[a] state court has not had a fair opportunity to consider alleged constitutional violations only if the arguments presented to it do not (a) rely on pertinent federal cases employing constitutional analysis; (b) rel[y] on state cases employing constitutional analysis in like fact situations; (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the Constitution ... [or] alleg[e] a pattern of facts that is well within the mainstream of constitutional litigation.

*Patterson,* 678 F.Supp. at 753, (*quoting United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 454 [7th Cir.1984]). While these reasons are cited for the proposition of when a state court has been alerted to constitutional issues, they are equally applicable in determining whether a *habeas corpus* petitioner is correct in asserting that his appellate counsel was ineffective because of failure to cite to federal precedents. Given these factors, analysis of counsel's appellate brief reveals that counsel did far more than what is mandated by *Strickland.*

### Conclusion

After review of appellate counsel's performance, in light of the totality of the circumstances I find that counsel's performance did not fall below the *Strickland* standard of "reasonably effective assistance". Counsel's brief was twenty seven pages long and included five points on issues he reasonably believed had potential for reversal at the appellate level. Accordingly, I find that even if *arguendo* counsel failed to consult with his client, although not worthy of praise, counsel's actions fall on the proper side of *Strickland. See Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. Even if counsel's representation fell below an objective standard of reasonableness for failure to consult with Grey about his issues which Grey wanted briefed on appeal, an analysis of Grey's claims fails to

demonstrate any reasonable probability that the outcome of his appeal would be different. Grey's letter of April 23, 1984, to appellate counsel solely reflects a strategic decision which he alleges would have changed the outcome of his appeal. However, none of Grey's allegations represents a *new* legal theory which counsel should advocate. Rather, each of Grey's points are merely embellishments to a brief which clearly survives the *Strickland* standard.

Accordingly, I recommend that the petition be dismissed. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

Dated June 25, 1991.